# In the United States Court of Federal Claims

No. 19-1331L

(E-Filed: July 16, 2020)

| | | |
|---|---|---|
| BENCH CREEK RANCH, LLC, and PAUL PLOUVIEZ, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Motion to Dismiss; RCFC 12(b)(1); Lack of Subject Matter Jurisdiction; Claims Sounding in Tort. |
| v. | ) ) | |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

A. Blair Dunn, Albuquerque, NM, for plaintiff.

Kristine S. Tardiff, with whom were Jean E. Williams, Deputy Assistant Attorney General and Prerak Shah, Acting Deputy Assistant Attorney General, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant. Nancy Zahedi, United States Department of the Interior, Sacramento, CA, of counsel.

OPINION

CAMPBELL-SMITH, J.

On December 6, 2019, defendant filed a motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims (RCFC), or in the alternative, for summary judgment thereon, pursuant to RCFC 56. See ECF No. 9. Plaintiffs filed a response on February 3, 2020, see ECF No. 12; and defendant filed a reply on February 18, 2020, see ECF No. 13. In ruling on defendant's motion, the court also considered the supplemental briefs filed by the parties, including:

(1) plaintiffs' supplemental brief,[1] ECF No. 16; (2) defendant's response, ECF No. 17; (3) defendant's supplemental brief,[2] ECF No. 22; and (4) plaintiffs' response, ECF No. 23.  For the following reasons, defendant's motion to dismiss for lack of jurisdiction is **GRANTED**.

I.       Background

Plaintiff Paul Plouviez is the owner of plaintiff Bench Creek Ranch, LLC, located in Washoe County, Nevada.  See ECF No. 1 at 2.  On the first page of their complaint, plaintiffs explain the theory of their case as follows:

> Defendant, by and through its agencies and employees, has severely impacted Plaintiffs with its management of wild horses on their property inversely condemning the compensable property interest in the improvements, water rights and forage.  The failure of the Bureau of Land Management ("BLM") to manage the wild horse population and the knowingly notorious usage of Plaintiffs['] water for the government's horses directly correlates to the act of creating and maintaining a nuisance for the intentional purpose of physically depriving Plaintiffs of their private property rights.

Id. at 1.  Plaintiffs allege that this court has jurisdiction over their claims pursuant to the Tucker Act, 28 U.S.C. § 1491 (2012), and the Declaratory Judgment Act, 28 U.S.C § 2201 (2012).  See id. at 2.

Plaintiffs contend that since the time of the Draw Fire, a wild fire that occurred on July 8, 2017, approximately 500 wild horses "had been counted on Plaintiffs' [Bureau of Land Management (BLM)] permit."  Id. at 3.  The wild horses "have been destroying Bench Creek Ranch, LLC's forage, and have also been appropriating drinking water from

---

[1]      Plaintiffs offer the Federal Circuit's decision in Taylor v. United States, 959 F.3d 1081 (Fed. Cir. 2020), as supplemental authority that, they argue, "controverts [defendant's] primary argument . . . that this Court lacks subject matter jurisdiction because the Government's actions that resulted in a taking sounded in tort."  ECF No. 16 at 1.  The facts in Taylor, however, are inapposite to this case because Taylor involves alleged affirmative acts by government officials, while this case involves an alleged failure to act.  See Taylor, 959 F.3d at 1085 (describing the complaint as alleging that government personnel "led [a contracting party] to terminate the contract" with plaintiffs).

[2]      Defendant offers this court's decision in L & W Construction LLC v. United States, No. 19-1628L, 2020 WL 2847079 (Fed. Cl. May 28, 2020), as supplemental authority.  See ECF No. 22.  The court considered the opinion, and, although L & W Construction is not binding authority, the court reaches a similar conclusion in this case.

Plaintiffs' vested water rights." Id. Plaintiffs claim that a "limited horse population has a grazing right on Plaintiffs' permit, but no water right." Id.

According to plaintiffs, the "horses and burros infesting Bench Creek Ranch are wards of the U.S. Government." Id. at 4. Plaintiff contacted the BLM's Carson City District Office to report the horses one year after the fire, on July 9, 2018. See id. at 2-3. On August 9, 2018, plaintiffs sent invoices to BLM for the cost of the water consumed by the horses through August 8, 2018, at a rate of $2 per horse per day, plus a finance charge, for a total of $397,440. See ECF No. 1-1.

The BLM acknowledged plaintiffs' correspondence in a letter dated December 21, 2018. See ECF No. 1-2. In the letter, the BLM expressed sympathy for any difficulty caused by the wild horses that had apparently been displaced by the Draw Fire, but denied plaintiffs' request for compensation. See id. Any water consumed by the wild horses, the BLM explained, was allowed under Nevada state law "requiring water rights holders to allow wildlife to access surface water sources that they customarily use." Id. (citing NEV. REV. STAT. § 533.367). It continued:

> The horses in question are located within the Clan Alpine [Herd Management Area (HMA)] and would customarily use any accessible surface waters located within the HMA. The status of the wild horses as wildlife and Nevada water law provisions protecting wildlife access to water does not support your request that the Federal Government provide you with financial compensation for wild horse consumption of water.

Id. at 2.

Plaintiffs deny that the wild horses are classified as "wildlife" under Nevada state law. See ECF No. 1 at 4. And although they admit that Nevada state law "does in fact require water for wildlife when any application for appropriation of surface water is approved by the Nevada State Engineer in accordance with Nevada Water Law first established in 1905," plaintiffs claim that "Bench Creek Ranch, LLC's water rights are pre-statutory vested water rights and are not subject to this current day provision for water dedicated to wildlife as beneficial use." Id.

Plaintiffs allege one count in the complaint, titled "Violation of the Fifth Amendment, Taking of Property without Just Compensation." Id. Therein, plaintiffs contend that the "BLM's failure to manage the wild horses occupying Plaintiffs['] lands has effectuated a taking of their property." Id. As of the date on which the complaint was filed, August 30, 2019, plaintiffs calculate damages of $808,419.30, but also assert that "[t]his amount continues to grow as the BLM refuses to remove the wild horses or to

3

provide their own source of water to the horses." Id. at 5.  Plaintiffs seek both monetary and declaratory relief.  See id. at 6.

Defendant now moves to dismiss the complaint, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  See ECF No. 9 at 8.  Alternatively, defendant moves for summary judgment.  See id.

II.     Legal Standards

Pursuant to the Tucker Act, the court has jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2012).  To invoke the court's jurisdiction, plaintiffs must show that their claims are based upon the Constitution, a statute, or a regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."  United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)).  See also Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (stating that to fall within the scope of the Tucker Act "a plaintiff must identify a separate source of substantive law that creates the right to money damages") (citations omitted).

The Fifth Amendment to the Constitution of the United States provides that the federal government may not appropriate private property "for public use, without just compensation."  U.S. Const. amend. V.  As such, takings claims for just compensation meet this jurisdictional criteria.  "When the Government takes property but fails to compensate the owner, the Tucker Act provides jurisdiction to enforce the owner's compensatory right."  Mildenberger v. United States, 643 F.3d 938, 944-45 (Fed. Cir. 2011) (citing Boling v. United States, 220 F.3d 1365, 1370 (Fed. Cir. 2000)); Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction.").

Plaintiffs bear the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence.  See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  In reviewing plaintiffs' allegations in support of jurisdiction, the court must presume all undisputed facts are true and construe all reasonable inferences in plaintiffs' favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds, 846 F.2d at 747 (citations omitted).  If, however, a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may

consider relevant evidence in order to resolve the factual dispute." Id. at 747. If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint. See RCFC 12(h)(3).

III.   Analysis

In its motion, defendant argues that this court lacks jurisdiction to consider: "(1) any claim premised on a nuisance theory or on BLM's failure to act, both of which sound in tort; (2) any claim seeking relief under the Declaratory Judgment Act[;] and (3) any claim seeking relief under the Administrative Procedure Act." ECF No. 9 at 10. The court agrees.

    A.    Claims Made Pursuant to the Declaratory Judgment Act and the Administrative Procedure Act

As an initial matter, plaintiffs explain in their response, that references to the Declaratory Judgment Act and the Administrative Procedures Act in the complaint resulted from "inartful pleading," and insist that they intend to rely only on the court's authority under the Tucker Act. See ECF No. 12 at 17-18, 19. On the basis of these representations, the court understands plaintiffs to have abandoned their claims to relief under the Declaratory Judgment Act and the Administrative Procedure Act. This is a wise decision on plaintiffs' part, as the court lacks jurisdiction to consider claims under either statute. See United States v. King, 395 U.S. 1, 5 (1969) (holding that the Declaratory Judgment Act does not vest the Court of Claims with the authority to issue declaratory relief); Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716-17 (Fed. Cir. 1998) (stating that the Declaratory Judgment Act is not applicable to this court). See also Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (holding that this court "lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act").

Accordingly, defendant's motion to dismiss any claims in the complaint made pursuant to the Declaratory Judgment Act or the Administrative Procedure Act is **GRANTED**.

    B.    Claims Sounding in Tort

The Tucker Act expressly excludes jurisdiction over tort claims from this court's authority. See 28 U.S.C. § 1491(a)(1) (defining the scope of this court's jurisdiction to include certain cases "not sounding in tort"). In their complaint, plaintiffs allege that the BLM's failure "to manage the wild horse population and knowingly notorious usage of

5

Plaintiffs['] water for the government's horses directly correlates to the act of creating and maintaining a nuisance for the intentional purpose of physically depriving Plaintiffs of their private property rights." ECF No. 1 at 1. This assertion implies two theories of liability, both of which sound in tort.

First, this court lacks jurisdiction to consider any claim that defendant has created or maintained a nuisance. Nuisance claims sound in tort, and as such, fall expressly outside this court's statutory grant of authority. See, e.g., Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1353 (Fed. Cir. 2001) (noting that nuisance claims sound in tort); Avery v. United States, 330 F.2d 640, 644 (Ct. Cl. 1964) (holding that the United States Court of Claims jurisdiction did "not extend to claims for damages from [nuisance] or trespass sounding in tort"); Nw. La. Fish & Game Pres. Comm'n v. United States, 79 Fed. Cl. 400, 406 (2007) ("This court has no jurisdiction over the plaintiff's claims regarding a continuing trespass or continuing nuisance. These claims sound in tort, and tort claims are expressly excluded from this court's jurisdiction under the Tucker Act.").

In addition, this court lacks jurisdiction over claims that defendant failed to properly manage the wild horses on plaintiffs' property. The United States Court of Appeals for the Federal Circuit has held, in no uncertain terms, that the government's inaction cannot form the basis of a takings claim—such a claim sounds in tort. In St. Bernard Parish Government v. United States, 887 F.3d 1354 (2018), the Federal Circuit rejected the plaintiff's takings claim for flood damage because it was based on the government's failure to maintain or modify the banks of a channel. It explained, in relevant part, as follows:

> While the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, it does not state a takings claim. A property loss compensable as a taking only results when the asserted invasion is the direct, natural, or probable result of authorized government action. On a takings theory, the government cannot be liable for failure to act, but only for affirmative acts by the government. The government's liability for a taking does not turn, as it would in tort, on its level of care. Instead, a takings liability arises from an authorized activity. In both physical takings and regulatory takings, government liability has uniformly been based on affirmative acts by the government or its agent.

Id. at 1360-61 (citations and quotations omitted).

Plaintiffs' claims, beyond their claims that defendant has created a nuisance, are clearly based on what they contend was defendant's failure to act. Specifically, plaintiffs allege that the "BLM's failure to manage the wild horses occupying Plaintiffs['] lands

has effectuated a taking of their property," and that the damages continue to mount because "the BLM refuses to remove the wild horses or to provide their own source of water to the horses." ECF No. 1 at 4-5. Although plaintiffs repeatedly characterize the BLM's "failure" and "refusal" as "actions," see id., the substantive allegations in the complaint address only the BLM's inaction.³ As such, pursuant to Federal Circuit authority, plaintiffs claim sounds in tort, not as a taking.

Plaintiffs' characterization of the BLM's behavior is not controlling in this court's jurisdictional analysis. "Regardless of the characterization of the case ascribed by [plaintiff] in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction." Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994). Here, plaintiffs have alleged, in substance, a tort claim for damages caused by defendant's failure to act. And as explained above, this court lacks the authority to consider claims sounding in tort.

Accordingly, this court lacks jurisdiction over plaintiffs' claims sounding in tort, and defendant's motion to dismiss such claims is **GRANTED**.

IV.   Conclusion

The court has carefully reviewed the complaint, and can discern no claims that survive defendant's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1). Accordingly,

(1)   Defendant's motion to dismiss, ECF No. 9, is **GRANTED**; and

(2)   The clerk's office is directed to **ENTER** final judgment in favor of defendant, and **DISMISS** plaintiffs' complaint in its entirety, without prejudice.

---

³   As alleged by plaintiffs, the only affirmative actions taken in this case, other than those taken by plaintiffs themselves, are the actions of the wild horses. Plaintiffs seem to acknowledge in their response that any actions taken by the wild horses were not actions that are attributable to the government. See ECF No. 12 at 22. But any suggestion that the horses were, in effect, government agents because BLM failed to stop them from drinking plaintiffs' water has been rejected by the Federal Circuit on multiple occasions. See, e.g., Colvin Cattle Co., Inc. v. United States, 468 F.3d 803, 809 (Fed. Cir. 2006) (holding that "because wild horses are outside the government's control, they cannot constitute an instrumentality of the government capable of giving rise to a taking"); Fallini v. United States, 56 F.3d 1378, 1383 (Fed. Cir. 1995) (holding that wild horses that consumed water on the plaintiffs property "are not agents of the Department of the Interior," and that "[w]hat the [plaintiffs] may challenge is what the government has done, not what the horses have done").

IT IS SO ORDERED.

                                                  <u>s/Patricia E. Campbell-Smith</u>
                                                  PATRICIA E. CAMPBELL-SMITH
                                                  Judge